UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAMON ASH, | |
|                              Petitioner, | 23-cv-3930 (AS) |
|            -against- | OPINION AND ORDER |
| EDWARD BURNETT, | |
|                              Respondent. | |

ARUN SUBRAMANIAN, United States District Judge:

      Petitioner Damon Ash filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the following reasons, Ash's petition is DENIED.

## BACKGROUND

      In 2016, Ash was charged with attempted first-degree assault, second-degree assault, and third-degree criminal possession of a weapon in connection with his assault of Ishmael Mendez on March 21, 2016. State Record (SR) at 98–99, Dkt. 21-1. He was also charged with first-degree coercion, third-degree intimidating a witness, fourth-degree tampering with a witness, and third-degree assault for conduct related to Mendez and Renee Martinez. *Id.* at 89–91. The trial court consolidated the two indictments. *Id.* at 49–50.

### I.    Evidence at Trial

      At trial, the People's evidence regarding Ash's assault of Mendez included the testimony of Mendez, a person who overheard the March 21 incident, law-enforcement agents, and a medical expert.

      Mendez testified that he and Ash lived on the same floor of a supportive housing program. Tr. at 113, Dkt. 21-7. During the weeks prior to the incident, Ash had been accusing Mendez of stealing marijuana from him and threatening to assault him. *Id.* at 119. Mendez testified that on March 21, 2016, at 1:30 a.m., Ash started banging on Mendez's door and accusing Mendez of stealing marijuana. *Id.* at 114–19. Mendez woke up and opened the door. *Id.* at 114. Mendez testified that Ash immediately began punching him. *Id.* at 115. The men started to fight and then Ash dragged Mendez into Ash's room, struck Mendez in the head with a glass bottle, pinned him to the floor, and bit his fingers. *Id.* at 115–19.

      Mendez testified that a security guard entered the room and shouted, "drop the knife." *Id.* at 120. Mendez said he thought the security guard was directing the statement to Ash because Mendez did not have a knife with him (although he had one in his room to cut mangos). *Id.* at 121. The security guard called the police, and both men were arrested. *Id.* at 128–29.

Defense counsel cross-examined Mendez about his criminal history, drug addiction, history of mental illness, prior statements to the grand jury in which he said Ash hit him in the head with a bottle before punching or dragging him, and statements to hospital staff that he had gotten in a fight. *Id.* at 132–67. Defense counsel also cross-examined him on prior statements he made during Ash's housing-court proceeding: "We started arguing. There was a confrontation. We started fighting. Who hit who first? I don't know. To tell you the truth, we came at each other." *Id.* at 151:14–152:6.

Aaron Schecter, who lived on the same floor as Ash and Mendez, also testified. Schecter said he was watching TV when he heard Ash yelling in the common area that Mendez stole his marijuana. *Id.* at 56, 58. From inside his apartment, Schecter then heard three loud bangs on Mendez's door. *Id.* at 57–58. Schecter said he heard Ash call Mendez a "punk" and say he was going to "kick his ass," and Mendez replied, "[L]et's do it." *Id.* at 60. Then he heard a fistfight and Mendez scream "you F'ing bit me." *Id.* Schecter did not exit his room. *Id.* After a few more minutes, he heard a security guard enter and yell "[d]rop the knife." *Id.* at 60:25–61:1.

Officer Mejia, one of the officers who arrived at the scene, described Ash as having "a small laceration on the bridge of his nose" and "a small laceration on one of his elbows." *Id.* at 255. Officer Mejia testified that Ash was "agitated, aggressive" and "looked like he was going to be combative." *Id.* at 256:24–25. Officer Mejia also said that Mendez had blood gushing all over his face and that he saw glass and blood near the entrance of Ash's apartment. *Id*. at 253–54. Sergeant Sanchez, who also arrived at the scene, testified that Ash was yelling and screaming while being detained by officers, while Mendez remained calm. *Id.* at 215–16.

Mendez received stitches on his face and had injuries to his back and side. *Id.* at 126–28. The People called an expert witness who testified that the injuries to Mendez's body were consistent with him being "either dragged or pulled sideways and pulled another way." *Id.* at 243. The expert also testified that Mendez suffered a fracture to the bone on the orbital wall of his eye socket. *Id.* at 235. He said that the injury to Mendez's face "[m]ight be" consistent with being struck with a bottle. *Id.* at 242:20. Mendez spent several days in the hospital. *Id.* at 163, 168. Mendez testified that when Ash returned to the housing unit, Ash threatened to tell everyone that Mendez was a "snitch." *Id.* at 130.

Officers executed a search warrant on Ash's room the day after the incident. *Id.* at 266–71. Officer Martinez testified that police recovered a broken glass bottle. *Id.* at 266–71. Officers never recovered a knife. *Id.* at 217. The record does not indicate whether officers conducted a search of Mendez's room.

Near the close of the People's case, defense counsel requested that the judge provide a justification charge. *Id.* at 274–75. The People objected, arguing that there was no "reasonable view of the evidence that Mr. Ishmael Mendez was in possession of a weapon of any sort such that the use of … deadly physical force against him would be justified." *Id.* at 275:11–14. After a lengthy discussion, the Court concluded that there was no reasonable view of the evidence in the record that would support a justification charge. *Id.* at 284–87. But the judge said he would

reconsider the decision if additional evidence was presented as part of the defense's case that supported a finding of self-defense. *Id.* at 290–91. The judge reviewed the transcript of the case and reaffirmed his decision the next day. *Id.* at 304–10. The People offered a recording of the 911 call into evidence and then rested. *Id.* at 313–14.

The defense did not present any evidence. *Id.* at 314. Defense counsel again asked the judge to reconsider the justification charge, arguing that it was warranted based on the 911 call, in which defense counsel thought the caller said that people were "cutting each other … with a bottle and blade." *Id.* at 315:7–8. The court concluded that the "untested, un[–]cross-examined hearsay statement of [a] third party who came upon a chaotic scene" was not sufficient to support a justification charge, because it did not give any indication that Ash was in fear and did not shed light on whether Ash was the initial aggressor. *Id.* at 317:24–318:1. After this exchange, defense counsel spoke with Ash and confirmed that Ash would not testify. *Id.* at 319.

During deliberations, the jury sent a note asking whether "conscious objective or purpose" meant "not under the influence of drugs or alcohol or self-defense." *Id.* at 461. The judge instructed that "[s]elf-defense or justification has a specific definition and meaning in our law. Based on that definition and the facts and circumstances of this case, justification or self-defense does not apply and is not a defense to any of the charges that are before you for consideration which is why you were not charged on its meaning or definition and which is why I am not going to charge you on its meaning or definition and explain to you exactly what it is about its legal meaning that makes it inapplicable to this case other than to tell you it does not apply and is not a defense to any of the charges." *Id.* at 462:22–463:7.

The jury acquitted Ash of attempted first-degree assault and third-degree assault. *Id.* at 485–87. Ash was convicted of second-degree assault, third-degree criminal possession of a weapon, first-degree coercion, third-degree intimidating a witness, and fourth-degree tampering with a witness. *Id.* Ash was sentenced to an aggregate determinate prison term of 8 and 1/3 years in prison. Ash was released from prison in November 2023. Dkt. 13.

## II.    State Court Appeals

In May 2020, Ash filed a counseled direct appeal. SR at 208–74. Among other things, he argued that the trial court erred by denying Ash's request for a justification charge related to his use of deadly force. *Id.* at 242–53. Counsel argued that this required reversal of his convictions for second-degree assault and third-degree criminal possession of a weapon (the two convictions related to his assault of Ishmael Mendez). *Id.* at 253. The appeal also argued that Ash's counsel was ineffective for failing to object to Ash's conviction for first-degree coercion, which had been limited to attempted coercion prior to trial. *Id.* at 254–59. Ash filed a pro se supplemental brief. *Id.* at 296–341.

The Appellate Division unanimously dismissed Ash's conviction for first-degree coercion. *People v. Ash*, 203 A.D.3d 548, 549 (1st Dep't 2022). Prior to trial, Ash had successfully argued that the charge should be reduced to attempted first-degree coercion, but the non-attempt charge

3

was still erroneously submitted to the jury. *Id.* The Appellate Division otherwise affirmed Ash's convictions. As to Ash's argument that he was entitled to a justification charge, the panel stated:

> The court properly denied defendant's request for a justification charge because there was no reasonable view of the evidence, viewed in the light most favorable to the defense, to support such a charge. There was no reasonable view of the evidence that when he broke a bottle over the victim's head, defendant subjectively believed that he was in imminent danger of being subjected to deadly physical force (*see People v Watts*, 57 NY2d 299, 302 [1982]; *see also People v Goetz*, 68 NY2d 96, 115 [1986]). There is no evidence that defendant saw a knife in the victim's hand during the incident or knew that the victim kept a knife in his room. No witness testified about seeing a knife, and no knife was recovered from the scene. Evidence that a nontestifying declarant mentioned someone having a blade or knife was consistent with the presence of broken glass under the facts presented, and these remarks did not create a reasonable view of the evidence to support a justification charge. Furthermore, even if the evidence could be viewed as suggesting that the victim had a knife, there is no reasonable view of the evidence that the victim was the initial aggressor with regard to deadly physical force (*see People v Petty*, 7 NY3d 277, 285 [2006]). Finally, defendant's request for a charge on justifiable use of force in defense against a burglary would require the jury "to speculate as to a sequence of events not supported by any of the testimony presented by either side" (*People v Bryant*, 306 AD2d 66, 66 [1st Dept 2003], *lv denied* 100 NY2d 618 [2003]).

*Id.*

Ash then filed three pro se post-conviction motions. First, Ash filed a motion to vacate his convictions pursuant to C.P.L. § 440.10 because, among other things, his counsel was "misleading" and "ineffective." SR at 513–14. The motion was denied. *Id.* at 520. The court held that "Defendant's conclusory assertion of ineffective assistance of counsel is unsupported by factual allegations substantiating the claim." *Id.* at 521. The court further stated that "defendant received meaningful representation at trial." *Id.* The court found that Ash's "claim that his attorney advised him that he would be entitled to a defense of justification even if he did not testify" was "belied by the record," given that "the court expressly ruled, in defendant's presence, that, at the conclusion of the People's case, no reasonable view of the evidence supported the requested justification charge, but that such justification charge might be warranted, and the decision would be revisited, should the defendant put on a case." *Id.* at 522.

Ash next filed a motion to set aside his sentence pursuant to C.P.L. § 440.20. The motion focused on the fact that his sentence was too "harsh" given that Ash was not "a predicate violent felon." *Id.* at 524–25. But the motion also stated that Ash received misleading information from his lawyer that led him not to testify. *Id.* at 524. Ash's motion was denied for largely the same reasons as his prior motion. *Id.* at 527–29.

Finally, Ash filed a motion to vacate his convictions pursuant to C.P.L. § 440.10. *Id.* at 533. Ash argued that his lawyer "was ineffective for his inexcusable failure to clearly articulate and support his request for a justification charge." *Id.* at 542. Among other things, Ash claimed

4

that his lawyer "failed to offer the search warrant affidavit document[] to the trial judge." *Id.* at 543. Ash claimed that a justification charge was his only viable defense and, but for his counsel's errors in failing to offer evidence, the judge would have given the jury a justification charge. The motion was denied without written explanation except for a citation to C.P.L. § 440.10(3)(b), (c). *Id.* at 736.

Ash then requested leave to appeal, which the Appellate Division denied. *Id.* at 927.

### III.     Procedural History

Ash, proceeding pro se, filed a petition for writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254. Dkt. 1. The petition seeks relief based on ineffective assistance of counsel because of counsel's inability to obtain a justification defense. *Id.* at 5. Specifically, Ash argues that "counsel failed to utilize available information [and] evidence in support of a proposed justification defense" and "failed to call important factual witnesses to support [the] defense." *Id.* Ash filed a memorandum of law in support of his petition, in which he also argued that he was erroneously denied a justification charge in violation of federal law. Dkt. 2 at 16.

On November 6, 2023, Ash filed a change-of-address form, indicating that he had been released from state custody. Dkt. 15.

## LEGAL STANDARDS

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state prisoner may challenge his conviction or sentence in federal court when "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may grant relief only for claims "adjudicated on the merits" in state court, and then only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). To prevail under § 2254, a state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## DISCUSSION

### I.     Ash's Release from Custody Does Not Deprive this Court of Jurisdiction

At the outset, the Court considers whether it has jurisdiction to decide this petition. Federal habeas corpus jurisdiction exists only if the petitioner is "in custody" when the petition is filed. 28 U.S.C. § 2254(a); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017). This requirement is satisfied even if the petitioner is later released from custody

before the petition is resolved. *See Spencer*, 523 U.S. at 7. In the present case, Ash filed his petition while he was in custody and was not released from custody until approximately six months after his petition was filed. *See* Dkts. 1, 13, 15.

However, since Ash has been released, the Court must also evaluate whether the petition has become moot. "Unlike the 'in custody' requirement, mootness is not fixed at the time of filing but must be considered at every stage of the habeas proceeding." *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016). "Once, as here, a petitioner's sentence has expired, 'some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained.'" *Id.* at 217–18 (quoting *Spencer*, 523 U.S. at 7). A habeas petition is "rendered moot by a [petitioner's] release from imprisonment 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

Here, Ash's release has not rendered his petition moot. Ash's petition challenges the legality of his felony convictions for second-degree assault and third-degree criminal possession of a weapon. And the Second Circuit has recognized that felony convictions carry "collateral consequences" so that a habeas petition is "[c]learly … not moot." *Anderson v. Smith*, 751 F.2d 96, 100 (2d Cir. 1984); *see also Carafas v. LaVallee*, 391 U.S. 234, 237 (1968). Respondent does not argue otherwise.

## II.    Justification Charge

Ash first seeks habeas relief because he was denied a justification instruction for the criminal charges relating to his assault of Mendez. The Second Circuit has explained that to grant a habeas petition in these circumstances the Court must answer "three questions in the petitioner's favor. First, was the justification charge required as a matter of New York state law? Second, if so, did the failure to give the requested charge violate the standard set out in *Cupp* [*v. Naughten*, 414 U.S. 141 (1973)]. Third, if so, was the state court's failure of such a nature that it is remediable by habeas corpus, given the limitations prescribed by 28 U.S.C. § 2254." *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001).

Under New York law, "a person seeking to assert the defense of justification for his use of deadly force by reason of his belief that deadly force would be used against him" must prove that he reasonably believes both "that another person is using or is about to use deadly physical force against him, and … that it is necessary for him to use deadly physical force to defend himself." *Id.* at 125 (footnote omitted). "[T]he justification statute imposes a two-part test which involves both subjective and objective components." *Matter of Y.K.*, 663 N.E.2d 313, 315 (N.Y. 1996). The subjective component requires a jury to find that the "defendant believed physical force (or deadly physical force) was necessary to defend against the imminent use of physical force (or deadly physical force)." *Id.* And the objective component requires the jury to find that the "a reasonable person would have held that belief under the circumstances which existed." *Id.*

6

"[I]f on any reasonable view of the evidence," (assessed in the light most favorable to the defendant) "the fact finder might have decided that the defendant's actions were justified," the trial court should instruct the jury as to the defense and must when so requested. *People v. Padgett*, 456 N.E.2d 856 (N.Y. 1983). When "there is no evidence that would support justification, the court may refuse to charge it." *People v. Frazier*, 86 A.D.2d 557, 557 (1st Dep't 1982).

Even if Ash could demonstrate that the justification charge was required as a matter of New York law, Ash's claim would fail at the second step of the habeas inquiry. A petitioner who is entitled to a justification charge under state law can obtain habeas relief only if "the trial court's refusal to give the justification instruction 'so infected the entire trial that the resulting conviction violates due process.'" *Jackson v. Edwards*, 404 F.3d 612, 624 (2d Cir. 2005) (quoting *Cupp*, 414 U.S. at 147). That means the denial was "sufficiently harmful [as] to make the conviction unfair." *Id.* (citation omitted). In *Jackson*, the Second Circuit held that the trial court's failure to give a justification charge resulted in a denial of due process because the justification defense rested on "the statements and testimony of numerous witnesses, including state witnesses, as well as on his videotaped confession," which would have provided "ample grounds for a jury to credit Jackson's justification defense, even if it found that the prosecution otherwise met its burden." *Id.* at 626. Similarly, in *Davis*, the Second Circuit found that denying a justification defense amounted to a due-process violation because the "evidence on the [self-defense] issue was quite favorable to Davis. And the jury, by ruling in Davis's favor on the question of extreme emotional disturbance, showed that it generally accepted the truthfulness of Davis's testimony." 270 F.3d at 131.

Here, the high bar for granting habeas relief cannot be met because—unlike in *Jackson* and *Davis*—the evidence of self-defense was weak. For one thing, there was little objective evidence that Ash acted out of self-defense. The evidence showed that Ash confronted Mendez in the middle of the night and that Mendez was unarmed. Ash pointed out that the 911 caller (who did not testify) may have referred to a knife and that a security guard yelled "drop the knife" upon arrival at the scene. But, as the Appellate Division explained, these statements were "consistent with the presence of broken glass under the facts presented." *Ash*, 203 A.D.3d at 549. And there was no other proof presented to the jury of Mendez wielding a knife: "[n]o witness testified about seeing a knife, and no knife was recovered from the scene." *Id.* So the evidence strongly pointed toward Mendez's not being armed. *See Steele v. Laclaire*, 2007 WL 2982240, at *8 (S.D.N.Y. Oct. 10, 2007) ("A number of New York courts have held that where a victim was unarmed, no reasonable defendant could have believed that he or she was in imminent danger of the use of deadly physical force." (collecting cases)).

In addition, the evidence indicated that Ash was the initial aggressor, and under New York law, a defendant cannot use deadly force when they were the initial aggressor. *DeLeon v. Lempke*, 401 F. App'x 610, 612 (2d Cir. 2010). To be sure, Mendez was confronted during cross-examination about prior statements he made describing the attack as a fight or saying that he was not sure who hit who first. But at trial, Mendez was clear that Ash was the initial aggressor. And since Ash did not testify, there was a dearth of evidence contradicting this account.

7

Finally, there was no evidence introduced at trial as to the subjective element of self-defense. Ash did not testify in his own defense. And other than Mendez (who testified that Ash initiated the unprovoked attack), there were no eyewitnesses who testified about what Ash might have seen. So there was nothing in the record supporting the subjective component. The Court acknowledges that the jury posed a question to the Court focusing on self-defense, at which point the Court instructed the jury that self-defense was not an issue to be considered. But the fact that justification may have been on the jury's mind during deliberations does not transform the issue into one of constitutional magnitude in light of the evidentiary record.[1]

For these reasons, the Court has no basis to conclude that Ash was denied a "highly credible defense" on which he had a "significant possibility of prevailing," *Gibbs v. Donnelly*, 402 F. App'x 566, 569 (2d Cir. 2010) (citation omitted), or that the failure to give a justification charge "so infected the entire trial that the resulting conviction violates due process," *Cupp*, 414 U.S. at 147.

And at the very least, Ash would fail at step three of the inquiry. "Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a state prisoner may not be granted unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." *Davis*, 270 F.3d at 132–33 (internal quotation marks omitted). For the reasons already explained, this case does not fit under either standard. First, the Appellate Division's decision was not an unreasonable application of clearly established federal law: Ash did not have "a *clear* right under New York law to have the jury consider his defense" so denying the justification charge did not violate due process. *Id.* at 133 (emphasis added). And second, there was no unreasonable determination of the facts here because the evidence was largely inconsistent with a finding of self-defense.

Ultimately, there was little evidence supporting Ash's claim that he was acting out of self-defense. Instead, the evidence at trial showed that Ash approached a neighbor in the middle of the night and started a violent, unprovoked attack. To be sure, some state-court judges might have taken a more generous view of the evidence and given the jury a self-defense instruction. But the trial court chose not to do so here, and the Court cannot conclude on this record that this amounted to an error that would warrant federal habeas relief.

---

[1] In his petition, Ash references the New York standard for use of physical force, rather than use of *deadly* physical force. Dkt. 2 at 18. But the only argument raised in the state proceedings or in this petition is that a justification charge of some kind was warranted because Mendez was armed. As explained, little (if any) evidence supported that argument.

### III. Ineffective Assistance

Ash also seeks habeas relief based on ineffective assistance of counsel. He says that his counsel failed to investigate Ash's version of events and introduce evidence at trial that corroborated his story. Ash describes this evidence as:

- A recording of his interview with police after the incident, in which he states that Mendez broke into his apartment and that Ash was acting in self-defense. Dkt. 2 at 20.
- An affidavit in support of the search warrant to search Ash's apartment, which states that Ash told police that Mendez had attacked him in his room with a razor or knife. *Id.* at 23, 33. The search warrant itself states that a "razor, knife, box-cutter, or other sharp instrument" may be found in the apartment. *Id.* at 35.
- Ash's medical records from June 2016 indicating that Ash had pain depending on his movement and from October 2016 indicating that Ash had a tear of his meniscus and his right ACL. *Id.* at 24, 44–45.
- Police Officer Christopher Pierce's prior statements that Ash said Mendez had attacked him. *Id.* at 24–25.

At the outset, Ash's ineffective-assistance claim appears to be procedurally barred. Ash raised this ineffective-assistance argument for the first time in his third post-conviction motion. SR at 534.[2] The motion was denied based on C.P.L. § 440.10(3)(b) and (c), which prohibit a state court from granting relief when the grounds for relief were already "determined on the merits upon a prior motion or proceeding" or "the defendant was in a position adequately to raise the ground or issue" in a prior motion "but did not do so." "[C]ourts in this Circuit have concluded that a state court denial based upon CPL § 440.10(3)(c) constitutes an adequate and independent state law ground, which forecloses federal habeas corpus review." *Wingate v. Titus*, 2023 WL 5045101, at *9 (E.D.N.Y. Aug. 8, 2023) (citation omitted). Ash's petition does not overcome this procedural bar, because he does not demonstrate (or even address) "cause for the default," "actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In any event, Ash's ineffectiveness claim does not warrant relief if considered on the merits. To prevail on the claim, Ash would need to demonstrate that defense counsel provided objectively deficient representation and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To satisfy the first prong—the performance prong—the record must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (internal quotation marks omitted). "Under the second prong—the prejudice prong—a 'reasonable probability' of a different result is a 'probability sufficient to undermine

---

[2] Ash also raised different ineffectiveness claims on direct appeal and in his first two post-conviction motions. In his direct appeal, Ash argued that his counsel was ineffective for allowing the first-degree coercion count to be submitted to the jury. SR at 254. And in his two first two motions, he argued that his counsel misled him into choosing not to testify. *Id.* at 513, 524.

9

confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Ash cannot meet this standard.

First, the medical records postdate the incident and do not indicate that Ash was so injured as of March 2016 as to make him physically unable to assault Mendez. So failure to introduce these records at trial does not make his counsel's performance objectively deficient. Nor is the failure to introduce the records prejudicial, since they provide no support for Ash's claim that he was unable to attack Mendez. *See* Dkt. 2 at 24.

The remaining evidence consists of documents containing post-arrest statements by Ash that Mendez started the fight, and that Ash was acting in self-defense. While Ash's self-serving post-arrest statements might have been helpful to his defense, they also likely were inadmissible hearsay that could not be offered for its truth. *See People v. Sibadan*, 240 A.D.2d 30, 38 (1st Dep't 1998) (trial court properly precluded defendant's post-arrest statement to police because "a party's self-serving, hearsay statements are generally inadmissible when offered in his or her favor at trial"); *People v. Dvoroznak*, 127 A.D.2d 785, 785 (2d Dep't 1987) (holding that trial court properly excluded detective's testimony concerning defendant's post-arrest statements because those exculpatory statements were "inadmissible hearsay" and it "is not the intent of the law to permit the defendant to avoid taking the stand and being subject to cross-examination by allowing his story to be presented through the hearsay testimony of another witness"); *cf. United States v. Camacho*, 163 F. Supp. 2d 287, 308 (S.D.N.Y. 2001) ("Statements to police and prosecutors by criminal suspects or defendants are not considered to be reliable, because the declarant generally wants to obtain favorable treatment; [the defendant's] statements to the police were especially unreliable because they were self-exculpatory.").

The Court cannot determine that counsel's failure to attempt to admit or elicit this hearsay evidence was objectively deficient or that the decision was prejudicial. *See Barnes v. Burge*, 372 F. App'x 196, 201 (2d Cir. 2010) (counsel's decision not to call a witness was not objectively unreasonable or prejudicial when the witness would have offered inadmissible hearsay testimony); *see also Walker v. United States*, 2022 WL 4632841, at *9 (S.D.N.Y. Aug. 23, 2022) ("[Counsel] was not unreasonable for failing to pursue inadmissible evidence, and no prejudice resulted.") *report and recommendation adopted*, 2022 WL 4661958 (S.D.N.Y. Sept. 30, 2022).

Defense counsel repeatedly requested that the trial court provide a justification instruction, citing all the record evidence that could possibly support the instruction. While defense counsel was ultimately unable to persuade the trial court to instruct the jury on justification, nothing in the record indicates that this was the result of counsel's deficient performance or lack of investigation.

\*     \*     \*

Ash also asked this Court to order Respondent to turn over various documents. Dkt. 22. Some of the documents that Ash requests appear to already be part of the record. In fact, the warrant he requests was attached to his own petition. *See* Dkt. 2 at 33. In any event, the documents that Ash references do not change the outcome of this petition since they are not relevant to

whether Ash was improperly denied a justification defense or whether Ash received ineffective assistance of counsel.

In the same letter, Ash requested counsel. Dkt. 22. "[A] habeas petitioner has no constitutional right to counsel in his habeas proceeding[.]" *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004). In determining whether to grant an application for counsel, the Court must consider whether Ash has made a "threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989) (per curiam). As already explained, the parties' submissions and the state-court record (including counseled state-court appeals) make clear that Ash's petition does not warrant relief. In addition, the Court does not find any legal or factual ambiguities material to Ash's claims that appointed counsel would need to clarify. So Ash's request for counsel is denied.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that Ash's petition for a writ of habeas corpus be denied. The Clerk of Court is directed to close this case.

As Ash has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith.

SO ORDERED.

Dated: June 28, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge